IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE iPHONE 11 IN A WHITE PHONE CASE | Case No.: 3:25mj313-HTC |
| IN THE MATTER OF THE SEARCH OF A SILVER APPLE MACBOOK BEARING SERIAL NUMBER FVFZ5CLXL410 | Case No.: 3:25mj314-HTC |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR
WARRANTS TO SEARCH AND SEIZE**

I, Jessica Keel, Special Agent (SA), Homeland Security Investigations (HSI), being duly sworn, depose and state the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant makes this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachments B-1 and B-2.

2. I am a Special Agent (SA) with the United States Homeland Security Investigations (HSI), Office of the Resident in Charge (RAC) Pensacola, Florida. I am an investigator or law enforcement officer of the United States within the

meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have been employed with HSI since November 2024. Prior to my appointment as a Special Agent, I was employed with the Okaloosa County Sheriff's Office for over 10 years, where I worked as sworn law enforcement officer. Since 2018, I was assigned as a Criminal Investigator where I conducted criminal investigations involving crimes against persons and property. In December of 2024, I attended the twelve-week Criminal Investigator Training Program (CITP) and the HSI Special Agent Training Academy at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. As part of my duties as a Special Agent, I have investigated or assisted in investigations involving the smuggling of firearms and unlawful possession of firearms such as the one I seek this warrant for. I am familiar with the methods used to commonly conceal items being shipped from or imported to the United States as means to elude law enforcement detection. I am responsible for conducting investigations into violations of federal criminal laws, including the smuggling of goods into the United States, aiding in unlawful importation, and the unlawful possession of firearms.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

3.   Your Affiant presents this affidavit in support of applications for search warrants to search and to seize relevant evidence found within the following devices: One (1) Apple iPhone device in a white case bearing an unknown IMEI (as more fully described in Attachment A-1 and hereinafter referred to as "TARGET DEVICE 1"); One (1) grey Apple MacBook bearing serial number FVFZ5CLXL410 (as more fully described in Attachment A-2 and hereinafter referred to as "TARGET DEVICE 2").

4.   The applied-for warrants would authorize the forensic examination of the devices for the purpose of identifying electronically stored data for evidence of possession of a machinegun in violation of Title 18, United States Code Section 922(o), transportation of a machinegun in violation of Title 18, United States Code Section 922(a)(4), and possession with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841, as more particularly described in Attachments B-1 and B-2.

5.   Your Affiant has not included each and every fact your Affiant knows of this investigation. Rather, your Affiant has included only those facts your Affiant believes are needed to demonstrate probable cause for the warrants sought. The information in this affidavit is based on your Affiant's personal knowledge and observations, on information conveyed to your Affiant by other

law enforcement officials or cooperating witnesses, and based upon my review of records, recordings, documents and other physical evidence related to the activities described herein.

6. As further discussed below, the investigation has thus far established that Tre'Veonce Ezekiel SANDERS utilizes TARGET DEVICE 1 and TARGET DEVICE 2.

## PROBABLE CAUSE

7. On or about July 24, 2025, United Parcel Service (UPS) presented a one-piece shipment from China inbound to Pensacola, Florida. This parcel arrived at the UPS Hub in Louisville, Kentucky. On August 11, 2025, United States Customs and Border Protection (CBP) Officers were conducting INBOUND inspections at the UPS Hub in Louisville, Kentucky. CBP Officers observed a package, hereinafter referred to as "SUBJECT PARCEL," coming INBOUND to the United States labeled from SHANDONG SHY CLOUD TECH CO, NO 2 BUILDING A 289 HUAXU, QINGPU, 201705 CHINA(MAINLAND). CBP Officers conducted an inspection of the SUBJECT PARCEL addressed to SUBJECT PREMISES, to consignee, "Tre Sanders," 18503160502, 3300 N. Roosevelt Street, Pensacola, Florida 32503. The inspection resulted in the discovery of a package containing metal contents to build a small-scale metal

4

tractor with one (1) machinegun conversion device ("MCD") in three parts concealed within the contents of the SUBJECT PARCEL.

8. Law enforcement database records revealed the following individuals currently reside at the SUBJECT PREMISES:

    a. Tre'Veonce Ezekiel SANDERS

    b. Markeal Deshae SANDERS

    c. Apyrle Lajoye DILLARD

    d. Herman Jermaine DILLARD

9. Law enforcement databases revealed the phone number, 18503160502, is associated with Tre'Veonce Ezekiel SANDERS. SANDERS reported 3300 N. Roosevelt Street, Pensacola, Florida 32503 as his address.

10. Based upon my training, experience, and discussions with other federal agents and law enforcement related to the investigation of international import-related National Firearms Act violations, I know of devices that have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger, at a rate of approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by

5

simply removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device. These devices are referred to by different names, including but not limited to: "Glock Switches," "switches," "auto-sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs). A photograph of the MCD and SUBJECT PARCEL imported is set forth below:



11. Your Affiant submitted a federal search warrant 3300 North Roosevelt Street. That warrant was signed by the Honorable Hope Thai Cannon on August 15, 2025. (Case number 3:25mj301-HTC). The warrant was executed by law enforcement on August 20, 2025.

12. Prior to the execution of the search warrant, a hoax package was delivered which was intended to appear as the package containing the MCD. The package did not contain the MCD, however, was equipped with a GPS device and break wire alarm which was set to give an audible alert when the package was opened. The package was delivered by law enforcement to 3300 North Roosevelt Street. The GPS indicated that the package entered the residence, and the trip wire alarm gave an audible alert that the package was opened.

13. Upon receiving the positive alert that the package was opened, law enforcement executed the search warrant. SANDERS was located in the front yard of the residence and attempted to flee on foot. SANDERS was taken into custody without incident. Law enforcement located a plastic bag containing marijuana that SANDERS threw during the short foot pursuit and TARGET DEVICE 1 was located on SANDERS' person.

14. Agents began searching the residence and located TARGET DEVICE 2 in SANDERS' bedroom. TARGET DEVICE 2 was located with the screen open on the bed next to the controlled package and the user account "Tre Sanders" was visible on the screen. Several items of identification were also located in this room identifying SANDERS as the occupant of the room including banking cards and a driver's license. Additionally, law enforcement located several ounces of marijuana packaged for sale, more than $5,000 dollars of United States Currency, a

7

Glock 9mm handgun with a 3-d printed MCD installed, and several 3-D printed MCD's for both Glock's and AR-15 style rifles.

15. From my training and experience, I know the following to be true:

   a. Individuals who smuggle goods into the United States typically do so with the assistance of others. Smugglers often use their cell phones, tablets, computers, and the internet to communicate with their suppliers and customers. Records of these communications and the contact information of the other members of the conspiracy are often saved in the individual's phone.

   b. Individuals in the United States often purchase Glock conversion devices from distributors located in China using online marketplaces, often via use of cell phones, tablets, or computers to place the orders. Upon agreement on the type; the quantity; and the price of the device, the purchaser is then directed to send payment to an individual in China. Upon receipt of the payment in China, the distributor then ships the contraband to the United States. The packages are then introduced into the United States by means of false and misleading statements written on Customs declarations and then are subsequently delivered to the purchaser. Customers often receive an emailed

8

receipt from the transaction from the online marketplace and/or their chosen electronic payment method.

c. Individuals who possess firearms usually possess other items related to firearms, such as gun cases, ammunition, ammunition magazines, holsters, spare parts, cleaning equipment, photographs of firearms, and receipts for the purchase of these items.

d. From my training and experience, I know it is common for individuals who illegally possess firearms and ammunition to conceal firearms and ammunition in secure locations within their residence, motor vehicles, and other real property over which they have dominion and control.

e. Additionally, I know that the unlawful possession of a firearm is often a conspiratorial crime. Individuals who illegally obtain firearms often do so with the help of others who may purchase, steal, or provide firearms to them. Individuals who are prohibited from possessing firearms may communicate with individuals who are not prohibited for the purpose of having someone who can "hold" for them, or quickly take custody of the firearm to help them avoid detection and arrest by law enforcement.

    f. These individuals often use personal cell phones, tablets, computer, and similar electronic devices ("Devices") in the commission of their crimes.

        i. These individuals commonly take photographs (or cause photographs to be taken) of themselves, their associates, their property and their contraband and firearms, and that these individuals, and usually take or store these photographs using their Devices.

        ii. The Devices may contain evidence of the purchase of Glock conversion switches in the form of electronic receipts, shipping confirmation emails, parcel tracking information, and payment receipts.

16.    TARGET DEVICE 1 and TARGET DEVICE 2 are currently in the lawful possession of the HSI Office of the Resident Agent in Charge (RAC) Pensacola, Florida. In my training and experience, your Affiant knows that TARGET DEVICE 1 and TARGET DEVICE 2 are stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as when the devices first came into the possession of the HSI. These devices were seized pursuant to a lawful premises search warrant; however, these device search warrants are sought out of an abundance of caution.

17. During the course of my training and experience and through conversations with other more experienced law enforcement officers, your Affiant has learned of various methods used by narcotics traffickers to conceal their assets, income, and activities from the government and other third parties. Based on my training and experience, and through conversations with other officers and agents, your affiant knows the following:

   a. Narcotics and firearms traffickers often utilize cellular telephones to facilitate communication with co-conspirators and/or store telephone numbers/addresses of associates;

   b. Narcotics and firearms traffickers often utilize multiple cellular telephones to compartmentalize their narcotics and/or firearms trafficking business. Multiple cellular telephones are often utilized in an effort to maintain anonymity and independent contact between sources of supply and a range of customers;

   c. Narcotics and firearms traffickers maintain records, receipts, notes, ledgers, and other items relating to the transportation, ordering, sale and distribution of controlled substances and/or firearms, which are usually maintained where the traffickers have ready access to them and are often stored on digital media;

   d. Narcotics and firearms traffickers commonly maintain addresses or

telephone numbers in devices which list names, addresses and/or telephone numbers of their associates in the trafficking organization; such records are normally maintained within places/things under their control;

e. Narcotics and firearms traffickers take or cause to be taken photographs of themselves, their associates, their property, and the illegal narcotics they distribute or firearms or U.S. currency they possess, and often maintain these photographs within places/things under their control, including on cellular devices;

f. Narcotics and firearms traffickers commonly use cellular telephones in order to communicate with their criminal associates and those telephones are commonly carried with them or kept at locations under their custody and control, such as their residences and vehicles, and contain names, numbers and other information stored in the phones; and

g. Narcotics and firearms traffickers commonly are involved in money laundering and retain records of their transactions within places/things under their control. Records of this kind are also often stored on digital media.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

18. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

19. *Forensic evidence.* As further described in Attachments B-1 and B-2 this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrants, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

13

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the devices consistent with the warrants. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the

entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrants.

21. *Manner of execution.* Because these warrants seek only permission to examine devices already in law enforcement's possession, the execution of the warrants does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the devices described in Attachment A-1 and A-2, to seek the items described in Attachment B-1 and B-2.

Respectfully submitted,

Jessica Keel
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on this 27th day of August 2025.

Hope Thai Cannon
United States Magistrate Judge